Lindsay G. Leavitt – 029110
Lleavitt@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Gastelum, | No. 2:17-cv-02849-SPL |
| Plaintiff | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR FEES, COSTS AND EXPENSES** |
| vs. | |
| A and D Hospitality 1, LLC d/b/a Knights Inn Phoenix North, | |
| Defendant | |

Defendant A and D Hospitality 1, LLC d/b/a Knights Inn Phoenix North ("A and D" or "Defendant"), through counsel, respectfully responds in opposition to Plaintiff's Application for Fees, Costs and Expenses ("Application"), filed on February 22, 2018 [Doc. # 27], as follows:

## I. INTRODUCTION

This Court has been asked to determine the amount of "reasonable attorney's fees" Mr. Strojnik should be awarded for drafting a copy-and-paste complaint in which the Plaintiff only prevailed on one of his five causes of action.[1]

The Court is well aware of Mr. Strojnik and his history of ADA litigation in Arizona since 2015.[2] In fact, the State Bar of Arizona has recently moved for an

---

[1] Furthermore, of the sixteen (16) ADA violations identified by Plaintiff in his Complaint, Defendant's ADA accessibility expert found that only six (6) were valid.
[2] The revisionist history described in the fee application regarding Mr. Strojnik's ADA litigation in Maricopa County is demonstrably false. Put simply, he served as

5965237v1(66920.1)

interim suspension of Mr. Strojnik's law license because the State Bar believes that Mr. Strojnik "has engaged in conduct the continuation of which will result in substantial harm, loss or damage to the public, the legal profession or the administration of justice."[3] See Exhibit A. In September 2017 Arizona District Court Judge Neil Wake referred to Mr. Strojnik's litigation tactics—i.e., filing a copy-and-paste complaint and then demanding $5,000 in attorneys' fees to settle the case—as "unethical extortion". See Exhibit B.

In Mr. Gastelum's ADA litigation against local hotels (90+ lawsuits filed since July 29, 2017) Mr. Strojnik's initial settlement demand (provided to Defendant in the form of a draft settlement agreement at the time the Summons and Complaint is served) demands more than $20,000 in damages plus a reimbursement of Mr. Strojnik's attorney's fees. See Exhibit C.

As more fully discussed below, the Court has ample justification to outright deny the Plaintiff's fee application because, among other reasons, the fee agreement between Mr. Strojnik and the Plaintiff is void as a matter of public policy. In a deposition taken by undersigned counsel in November 2017, Plaintiff admitted that he receives a $350.00 flat rate for any ADA case that settles (or when money is collected from the Defendant). At the time of the deposition Plaintiff had settled five (5) cases. The Plaintiff admitted that he did not know the amount that the cases had settled for—only that he received his $350.00 in a sealed envelope from Mr. Strojnik once the money was collected. The language of the fee agreement between Plaintiff and Mr. Strojnik purportedly gives Mr. Strojnik "unfettered discretion in all settlement matters provided, however, that Client's consent shall be required when

---

lead counsel in more than 1200 ADA cases that were consolidated and collectively dismissed for lack of standing. Mr. Strojnik and his client, Advocates for Individuals with Disabilities Foundation, agreed to pay $25,000 in sanctions and agreed not to appeal the trial court's dismissal.

[3] The Presiding Disciplinary Judge had not yet ruled on the State Bar's Motion for Interim Suspension by the time this Response was filed with the Court.

2

1  the settlement amount is less than $350.00 payable to Client."  At least one of those
2  settlement agreements has been entered into evidence in another matter.  The case
3  settled for $18,750.00. See Exhibit D.   This means Plaintiff collected less than 2% of
4  the settlement amount with the remaining 98% presumably going to Mr. Strojnik.

5        To put Mr. Strojnik's request for $19,519.20 in fees, costs and expenses in
6  perspective, if he averages $15,000.00 in fees in each of the 90 identical ADA cases
7  he has filed since August 2017 he will have generated $1,350,000.00 in fees for legal
8  work done over the course of six (6) months.  Even if the Court permitted Mr.
9  Strojnik to bill at $650/hour (which it should not) this would mean that he billed
10 2077 hours in six months (or 346 hours per month).  In other words, Mr. Strojnik is
11 claiming to bill 11.5 hours per day, seven days a week for six months straight.  Mr.
12 Strojnik's fee application in this case should not be viewed in a vacuum, but rather as
13 part of a broader narrative.

14       Defendant urges the Court to use its discretion to outright deny Mr. Strojnik's
15 application for fees (especially if his license to practice law has been suspended), or
16 at the very least to reduce his fees to a "reasonable" amount that does not shock the
17 conscience and offend the notions of fairness and equity.

18 **II.   FACTUAL BACKGROUND**

19       Defendant owns and operates a Knights Inn franchise located at 2735 West
20 Sweetwater Avenue in Phoenix, Arizona. Plaintiff is a resident of Casa Grande,
21 Arizona who had not stayed in a Phoenix-area hotel for several years prior to being
22 introduced to Mr. Strojnik.  Currently, he has sued more than 90 Phoenix-area hotels
23 since July 29, 2017 claiming that he planned to stay in each of them. When asked at
24 his deposition why his desire to stay in Phoenix-area hotels had suddenly increased
25 from zero in 2015-2016 to more than 90 hotels in six months, Mr. Gastelum replied
26 "No particular reason."

27       The Complaint in this matter was filed on August 23, 2017, the 23rd ADA

28

3

complaint filed by Plaintiff in less than a month. All the Complaints are virtually identical—only a handful of paragraphs within the Complaint contain allegations unique to the Defendant.

Plaintiff's Complaint contained five claims: (1) ADA, (2) Negligence, (3) Negligent Misrepresentation, (4) Failure to Disclose, and (5) Consumer Fraud/Common Law Fraud. Plaintiff is only entitled to his reasonable fees for the ADA claim—there is no recovery of fees for work spent on the remaining state law tort claims.[4]

Immediately after being served with the Complaint, Defendant retained Paul Farber, a certified accessibility expert, to evaluate the alleged violations. Mr. Farber determined that of the sixteen (16) ADA violations Plaintiff allegedly identified at the hotel, only six (6) were valid. See Exhibit E.

Whether those minor violations actually deterred the Plaintiff from staying at Defendant's hotel sufficient to confer Article III standing is dubious—regardless, the expense of litigating that issue does not make economic sense for Defendant.

Upon receiving Mr. Farber's report, Defendant immediately went about remedying the six valid ADA violations.

Plaintiff also alleged that he encountered ADA violations on the Knights Inn website and during the online reservation process. Defendant does not own (or control) the Knights Inn website—it is owned and controlled by Wyndham Worldwide Inc. Whether Defendant, a franchisee, is actually liable for ADA violations on a website that it does not own or control (and thus, whether Defendant is even the proper defendant in this lawsuit) is a valid legal issue that, again due to its limited financial means, did not make economic sense for Defendant to litigate. However, in an analogous case, the Ninth Circuit recently held that tenants were not

---

[4] Not that it matters. Plaintiff did not prevail on his tort claims.

4

liable for ADA violations in areas that were exclusively under the control of the landlord. *Kohler v. Bed Bath & Beyond of California, LLC*, 780 F.3d 1260, 1266 (9th Cir. 2015). Defendant is attempting to work with Wyndham Worldwide to remedy the alleged website violation(s).

## II.   LEGAL ARGUMENT

### A. The Court has the discretion to (and should) outright deny Plaintiff's fee application.

A prevailing plaintiff under the ADA should ordinarily recover a reasonable attorney's fee *unless special circumstances would render such an award unjust*. *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) (Emphasis added).

The Arizona District Court has already held that Mr. Strojnik's extortionist litigation tactics warrant an outright denial of attorney's fees. On September 1, 2017, Judge Neil Wake of the District Court of Arizona issued an eleven page ruling against another serial ADA litigant represented by Mr. Strojnik, which culminated with the following conclusion:

> In this case, the complaint demanded a minimum of $5,000 in attorney's fees. In a simple form complaint case like this, it is impossible that the fee for preparing and filing the complaint could be $5,000. Moreover, the federal disability statute allows the award of only "a reasonable attorney's fee," not any fee the attorney may demand. **No fee is the reasonable fee for an unnecessary lawsuit that a demand letter would have taken care of. A demand for a fee beyond what is reasonable is a demand without legal basis under the ADA.**

*Advocates for Individuals with Disabilities LLC v. MidFirst Bank*, 2017 WL 3872419 at *6 (D. Ariz. September 5, 2017). See Exhibit A.[5]

---

[5] While the ruling in *Advocates for Individuals with Disabilities LLC v. MidFirst Bank* is not binding, it certainly is persuasive. *Gustafson v. Goodman Manufacturing Company LP,* 2016 WL 1029333 at *3 (D. Ariz. March 14, 2016).

5

5965237v1(66920.1)

Judge Wake's opinion rejecting attorneys' fees for serial ADA plaintiffs is entirely consistent with United States Supreme Court precedent. In *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835 (2001), the Supreme Court found that one of the purposes in giving a trial court discretion to outright deny an award of attorneys' fees to a prevailing plaintiff in an ADA case is to discourage "extortionist" behavior. *Id.* at 618, 640 ("And Congress assigned responsibility for awarding fees not to automatons unable to recognize extortionists, but to judges expected and instructed to exercise 'discretion'"). Judge Wake's opinion lamented that serial ADA plaintiffs' "extortionist practices" (led by Mr. Strojnik) had become "pervasive" in Arizona.

By the time Judge Wake had issued his rejection of Mr. Strojnik's "unethical" and "extortionate" demands for $5,000, Mr. Strojnik and Mr. Gastelum had already filed more than two dozen of these ADA lawsuits demanding <u>tens of thousands in fees following service of the complaints</u>. This litigation tactic is precisely why the ADA granted (and the U.S. Supreme Court emphasized the importance of) trial courts' discretion to rein in the extortionate behavior of plaintiff's attorneys collecting millions in attorneys' fees under the guise of civil rights litigation.

The State Bar of Arizona clearly agrees with Judge Wake's ruling and has taken the extraordinary measure of seeking an immediate suspension of Mr. Strojnik's law license because his litigation tactics in these ADA cases has caused "substantial harm, loss or damage to the public, the legal profession or the administration of justice." They also argue that Mr. Strojnik's ADA lawsuits "appear to be nothing more than vehicles for [Mr. Strojnik] to extort unreasonable attorney's fees from defendants." See Exhibit A.

The Court may also deny the Plaintiff's fee application because the underlying fee agreement—which purportedly gives Mr. Strojnik "unfettered discretion" to settle the Plaintiff's case—is a direct violation of ER 1.2(a).

6

5965237v1(66920.1)

ER 1.2(a) provides that:

> A lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by ER 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

Ariz. Op. 94-02 explains that a "client may not be asked to agree to representation so limited in scope that the client surrenders the right to settle his or her own matter."

The Comment to ER 1.2(a) also provides that the "decisions specified in ER 1.2(a), **such as whether to settle a civil matter, must also be made by the client.**" (Emphasis added). See Exhibit F.  Again, the fee agreement between Mr. Gastelum and Mr. Strojnik gives Mr. Strojnik unfettered discretion to settle the Plaintiff's case, thus it violates ER 1.2(a). When a fee agreement in Arizona violates public policy by failing to comply with the Rules of Professional Conduct, the attorney is not entitled to any fee. *Peterson v. Anderson*, 155 Ariz. 108, 745 P.2d 166 (App. 1987).

Accordingly, Mr. Strojnik is not permitted to recover a fee in this matter because his fee agreement violates ER 1.2(a)

**B.     In the event the Court opts to award fees to Plaintiff, it should find that Mr. Strojnik's 20.3 hours expended and $650 hourly rate for a copy-and-paste Complaint are not justified under the *Kerr* factors.**

The ADA states that the court "in its discretion, may allow the prevailing party…a reasonable attorney's fee, including litigation expenses, and costs…" 42 U.S.C. § 12205.  The most useful starting point for determining the amount of a reasonable fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (Emphasis added). Trial courts are not accountants, though, and "may take into *account their overall sense of a suit*, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice,* 131 S.Ct. 2205, 2216 (2011) (Emphasis added).

7

1   Utilization of the *Kerr* factors, therefore, "provides a measuring stick whereby an
2  appeals court can evaluate whether the district court acted within its broad discretion to
3  enhance or reduce a fee award based on the facts of a particular case." <u>Holhbein v. Utah</u>
4  <u>Land Resources, LLC</u>, 2015 WL 1413503 at *4 (D. Nevada, March 27, 2015).

5   The *Kerr* factors include:

6   (1) the time and labor required, (2) the novelty and difficulty of the questions
7  involved, (3) the skill requisite to perform the legal service properly, (4) the
8  preclusion of other employment by the attorney due to acceptance of the case, (5) the
9  customary fee, (6) whether the fee is fixed or contingent, (7) time limitations
10 imposed by the client or the circumstances, (8) the amount involved and the results
11 obtained, (9) the experience, reputation, and ability of the attorneys, (10) the
12 'undesirability' of the case, (11) the nature and length of the professional relationship
13 with the client, and (12) awards in similar cases. <u>Kerr v. Screen Extras Guild, Inc</u>.
14 526 F.2d 67, 70 (9th Cir. 1975)

15  The Ninth Circuit has also recognized that an initial "haircut" of 10% is
16 warranted when the defendant makes a good faith effort to comply with the ADA once
17 they received notice of the specific violations. <u>Gonzales v. City of Maywood</u>, 729 F.3d
18 1196, 1203 (9th Cir. 2013). This percentage reduction is based on an exercise of the
19 Court's discretion and may be made "without a more specific explanation." *Id.* (citing
20 <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1112 (9th Cir. 2008)).

21  **Time and Labor Expended**

22  As expressed by Judge Wake, it is "impossible" that the fees incurred for
23 preparing a simple form copy-and-paste Complaint could amount to $5,000, let alone
24 the $7,020.00 (10.8 hours at $650/hour) that Mr. Strojnik claims he incurred in
25 preparing and filing this particular complaint. For example, Mr. Strojnik claims he
26 spent 2.75 hours in an in-person meeting with Mr. Gastelum to discuss the "issues

27

28  8

raised by the client and matters of representation."[6] This is unreasonable considering this was the 19th Complaint filed by Mr. Gastelum in less than a month—and that this Complaint contains no novel legal or factual issues.

Furthermore, it was not reasonable for Mr. Strojnik to spend 2.85 hours doing a "due diligence" visit to the Defendant's hotel. This visit would have been better accomplished by an ADA expert at a much cheaper hourly rate. For example, Defendant's ADA expert Mr. Farber charges $175/hour. Mr. Strojnik's time and hourly rate spent at the property (and reviewing the alleged ADA report allegedly prepared by Mr. Strojnik's son, Eric) is particularly egregious considering that less than 40% of the ADA violations he identified were actually valid.

Furthermore, the MIDP responses and Discovery Requests prepared by Mr. Strojnik were (like the Complaint) copied and pasted from previous cases he had done. In addition, more than 3.5 hours of Mr. Strojnik's time entries are billed as a .1 or .15 for doing mundane tasks that could have been competently performed by a legal assistant or paralegal (at a much lower hourly rate).

Finally, the Court must consider that a substantial portion of Mr. Strojnik's time was spent devoted to litigating the state tort claims Plaintiff alleged: Negligence, Negligent Misrepresentation, Failure to Disclose, Consumer Fraud and Common Law Fraud. The Plaintiff did not prevail on those claims nor is Mr. Strojnik entitled to collect fees for time spent working on those claims (which comprised 80% of the claims brought).

          i.    <u>Lack of Pre-Litigation Notice</u>

---

[6] It appears this 1.5 – 2.75 hour "in person meeting" between Mr. Gastelum and Mr. Strojnik "to discuss matters of representation" is a standard entry in every case. For example, attached are three other Statements of Account provided by Mr. Strojnik in fee applications in which he bills for this same meeting. See Exhibit G. What could Mr. Strojnik and Mr. Gastelum be meeting about for 2.75 hours "regarding matters of representation"? Perhaps this meeting makes sense in the first couple of ADA cases they filed, but it is unreasonable for 19th ADA Complaint filed in August 2017.

9

Lack of pre-litigation notice is one of the main factors the Court may consider when determining whether to *reduce the amount of attorney's fees* it awards to the "prevailing plaintiff." Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) (Emphasis added).

> A district court may, in its protraction analysis, consider whether a plaintiff provided pre-litigation notice. Pre-litigation notice is not required, and failing to provide notice is not unjust, but district courts have discretion to consider all kinds of non-required conduct in deciding whether litigants have protracted litigation.
>
> While a district court may not reduce fees on the premise that the suit should not have been filed at all before providing notice, it does have discretion to determine whether failing to provide pre-litigation notice resulted in unnecessary fees during the course of the litigation—that is, fees that would have been lower had there been notice before filing.

Jankey, 537 F.3d at 1132.

Defendant's principal, Dipesh Patel, has signed a declaration stating that he would have responded to a pre-litigation notice from Mr. Gastelum and would have immediately undertaken remedial efforts. See Exhibit H. While pre-litigation notice is not specifically required by the ADA, it is generally the custom in civil rights disputes. Pre-litigation notices can prevent both sides from incurring unnecessary attorneys' fees by exploring the possibility of early resolution.  Why Plaintiff chose not to provide notice to Defendant prior to filing suit is not a mystery.  The answer is money—Plaintiff would not have received his $350.00 flat rate and Mr. Strojnik would not have been able to claim more than ten thousand in fees had they provided pre-litigation notice.

### Novelty and Difficulty of the Issues Involved

This case is routine for Mr. Strojnik—it was the 19th ADA complaint filed by the Plaintiff between July 29, 2017 and August 23, 2017. The issues are straightforward. Pursuant to 28 CFR § 36.302(e), a hotel's website must allow

10

individuals with disabilities to (1) reserve accessible guest rooms online and (2) to identify the accessible features of the property in enough detail so that an individual with disabilities can determine whether the property meets his or her accessibility needs. The other ADA violations alleged in the Complaint are standard "low-hanging fruit" violations.

The straightforwardness of this case weighs against a high fee rate and a high fee award. *See* Moreno v. City of Sacramento, 534 F.3d 1106, 1116 (holding that the district court "may properly use the simplicity of a given task as justification for a reduction in the rate for the hours spent performing that task or as a justification for a reduction in the overall rate").

Regardless, Mr. Strojnik's hourly rate of $650.00 is unreasonable on its face. According to the survey of hourly rates published in the *State Bar of Arizona 2016 Economics of Law Practice in Arizona* the median hourly rate in Arizona for a plaintiff litigation attorney with 30 – 39 years of experience is $299 and for a plaintiff personal injury attorney is $312. See Exhibit I. In other words, Mr. Strojnik's claimed rate of $650/hour is more than double the average rate charged by Arizona plaintiffs' lawyers with similar years of experience. His rate is especially unreasonable in light of the simplistic legal and procedural issues involved in this matter.

Furthermore, the 104.80 hours that Mr. Strojnik claims he devoted to "pre-filing due diligence" in July 2017 should not be apportioned pro rata to this case, the 19th ADA case he filed since conducting that pre-filing due diligence. Those 104.80 hours should have been billed to the first lawsuit he filed, *Gastelum v. MCPHX17, LLC*, 2:17-cv-02536-DGC, and not to this case (or any subsequent case) in a pro-rata fashion.

**The skill requisite to perform the legal service properly.**

A legal assistant or paralegal could have performed the vast majority of work in this case. As Mr. Strojnik concedes, the Complaint is virtually identical to the 18 he had previously filed. As Mr. Strojnik's Statement of Account demonstrates, there

11

5965237v1(66920.1)

was virtually no substantive legal work performed in this case—he simply used templates and forms from previous cases.   Even if Mr. Strojnik was considered by the Court to be a highly experienced ADA attorney—despite having lost more than 1200 ADA cases in one day—none of that experience was needed to prosecute or resolve this lawsuit.

### The preclusion of other employment by Mr. Strojnik due to acceptance of the case and his customary fee.

Mr. Strojnik concedes that representing Mr. Gastelum takes up approximately 90% of his time—together they average approximately 20 new case filings a month. As noted above, the math on that is virtually unbelievable as Mr. Strojnik's fee application (if multiplied by the 90 cases he's filed with Mr. Gastelum) would indicate Mr. Strojnik is billing more than 380 hours a month.  Furthermore, Mr. Strojnik does not indicate that any of his other (non pro-bono) clients currently or in the past have ever retained his services at a rate of $650 per hour.  This factor cuts in favor of reducing his fee amount.

### Whether fee is fixed or contingent.

Pursuant to the fee agreement between Mr. Gastelum and Mr. Strojnik, Mr. Gastelum will never be personally liable to pay Mr. Strojnik's fees, even if Mr. Gastelum does not prevail in the matter.  The fee agreement states that in the event "a particular Claim does not result in a settlement or an award of costs, expenses and fees, then Attorney shall be entitled to recover his costs and expenses from the proceeds of another Claim or waive the costs and expenses at his discretion."  This factor cuts in favor of reducing Mr. Strojnik's claim for fees.

### The amount involved and the results obtained.

Defendant concedes that Plaintiff should be considered a "prevailing plaintiff" in this matter. Defendant has agreed to remedy the valid ADA violations on its property and to work with Wyndham Hotels & Resorts to remedy the alleged

12

violations on the website. It is important to remember, however, that Plaintiff only prevailed on one of the five claims he alleged in his Complaint. The remaining state law tort claims did not generate any damages for Plaintiff. This factor cuts in favor of reducing Mr. Strojnik's claim for fees.

### The experience, reputation, and ability of the attorneys.

While Mr. Strojnik has been practicing commercial litigation for more than 35 years, he has only been litigating ADA matters since 2015. As to his reputation, he is widely considered to be the most controversial attorney currently practicing in Arizona. A google search of his name will reveal numerous articles, news reports, judicial opinions, and State Bar disciplinary proceedings disapproving of his ADA litigation efforts. While he has served as lead counsel in more than 2000 ADA cases the vast majority were consolidated and dismissed by Maricopa Superior Court Judge David Talamante. In addition, it does not appear that he has ever taken an ADA case to trial or even extensively litigated one. This factor cuts in favor of reducing his fee amount.

### The 'undesirability' of the case.

As Mr. Strojnik concedes, these lawsuits are not popular in Arizona among the business or disability community. This is not because the business community opposes the ADA, the current climate is such solely due to Mr. Strojnik's serial ADA litigation—more than 2000 "drive by" ADA lawsuits filed against Arizona businesses and commercial landlords since June 2015. Because Mr. Strojnik single-handedly created the "undesirability" of litigating an ADA case in Arizona, this factor cuts in favor of reducing his fee amount.

### Awards in similar cases.

Undersigned counsel recently litigated a fee application filed by Peter K. Strojnik, Jr. (the son of Plaintiff's counsel) in an ADA "pool lift" lawsuit. Judge Hollard reduced Mr. Strojnik Jr.'s hourly rate from $650 to $350 and awarded him

13

$3,600 in attorney's fees and $460 in costs.  A copy of Judge Holland's opinion is attached hereto as Exhibit J.

### III.   CONCLUSION

The Court has broad discretion (and ample justification) to deny, or significantly reduce Plaintiff's fee award.  A request for $19,519.20 in fees, costs and expenses for a case that includes a copy-and-paste Complaint and virtually *no other substantive legal work* is simply unreasonable.  Mr. Strojnik's hourly rate of $650 is also unreasonable—so too is his claim to have spent more than 23 hours litigating this matter.  Accordingly, the Defendant requests the Court outright deny (or significantly reduce) the Plaintiff's fee application.

RESPECTFULLY SUBMITTED this 16th day of March, 2018.

**JENNINGS, STROUSS & SALMON, P.L.C.**

By: s/ Lindsay G. Leavitt
Lindsay G. Leavitt
One East Washington Street, Suite 1900
Phoenix, AZ  85004-2554
*Attorneys Defendant*

5965237v1(66920.1)

**CERTIFICATE OF SERVICE**

☒  I hereby certify that on March 16, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik  
ada@strojnik.com  
STROJNIK, P.C.  
2375 East Camelback Road, Ste. 600  
Phoenix, AZ 85016

☐  I hereby certify that on March 16, 2018, I served the attached document by mail on the following, who are not registered participants of the CM/ECF System:

                         s/ Tana Davis-Digeno

15

5965237v1(66920.1)