Peter Strojnik, State Bar No. 6464
**STROJNIK P.C.**
2375 East Camelback Road Suite 600
Phoenix, Arizona 85016
Telephone: (602) 524-6602
ADA@strojnik.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| FERNANDO GASTELUM,<br><br>Plaintiff,<br><br>vs.<br><br>A and D Hospitality I, LLC<br><br>Defendant. | Case No: 2:17-cv-02849-SPL<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO APPLICATION FOR FEES, COSTS AND EXPENSES**<br><br>Oral Argument Requested |

It has become quite fashionable for ADA offenders to play the victim card, and this Defendant is no different. But let us recall Judge Holland's memorable rebuke of defense counsel in *Brooke v. Airport Hotel, LLC* 2:15-cv-1149-HRH (D. Ariz., 2015) where, in soundly denying a motion to dismiss, he noted:

> By way of introduction to its motion to dismiss, defendant points out that plaintiff has filed multiple, "generic" lawsuits. Defendant alleges that plaintiff is "targeting" "mom-and-pop" businesses that cannot afford to defend claims such as that brought here.
>
> Plaintiff is the potential victim here, not the defendant. The fact that plaintiff has filed multiple suits (in excess of 50 at last count) is not relevant to the instant motion. "For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time

when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007).

The victim card is evoked to tap into the subliminal but socially accepted hostility toward civil rights litigants. Defense understands that "a number of courts addressing Title III cases have been skeptical, and even hostile" to the civil rights of the disabled. *Gilkerson v. Chasewood Bank*, 1 F.Supp.3d 570, 596-97 (S.D. Tex., 2014). This subtle and silent discriminatory sentiment grows strong and powerful amongst us. Some use the victim card in the hope of waking and provoking the subconscious anti-equality sentiment in others.

Where the legal debate lacks persuasion and authority, a thoughtful debate is debased into a psychological awakening of the basest of human sentiments, prejudice. This is easily recognizable where legal authority and thoughtful persuasion are substituted with personal attacks, disparagement and ridicule. As here.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. Defendant's Objection to Attorney's Fees is Legally Insufficient

In *State of Arizona v. Maricopa County Medical Society*, 578 F. Supp. 1262 (D.Ariz.1984), the Court stated:

> ... [j]ust as the applicant cannot submit a conclusory application, an opposing party does not meet his burden merely by asserting broad challenges to the application. It is not enough for an opposing party simply to state, for example, that the hours claimed are excessive and the rates submitted too high.

578 F. Supp. at 1264, quoting *Nat. Ass'n of Concerned Vets v. Sec. of Defense*, 675 F.2d 1319, 1338 (D.C.Cir.1982).

Here, Defendant's Response offers no specifics, just conclusory applications of general principles and broad assertion of excessive hours and hourly rate.

The specificity requirement is not novel to Defendant's counsel. In the matter of *Gastelum v. Pride Hospitality*, 2:17-cv-03607-GMS, the same defenses counsel filed a similar response to Plaintiff's request for attorney's fees following the same strategy of offering judgment and then attacking opposing counsel's fees; however, in the *Pride Hospitality* case, the objection was supported by the Declaration of Linda Shely, a well

2

known and respected ethics counsel and fees expert. Unfortunately for Defendant, in the *Pride Hospitality* case Ms. Shely opined that Plaintiff's Counsel's hourly fee of $650 may well be reasonable. *See* 2:17-cv-03607 at Doc 23-1, Exhibit G, Declaration of Lynda C. Shely. No surprise, then, that no such declaration is appended to Defendant's Response in *this* case.

The burden is on the party objecting to the application "to demonstrate why any of the billing entries were immaterial, irrelevant or otherwise unreasonable." *State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 594, 845 P.2d 513, 520 (App. 1992). As here, in *Tocco* the objecting party only generally complained that attorney fee request was unreasonable, and generally "[disagreed] with the alleged basis of numerous itemized entries[.]" Such a general objection to a fee affidavit is insufficient to establish the requested fees' unreasonableness. *See id.* Defendant's Objection is legally insufficient.

**2. A significant Portion of Fees were Incurred because of Defendant's Own Litigation Strategy.**

In ADA litigation, Plaintiff's fees are directly proportionate to the amount of work imposed on Plaintiff by Defense litigation strategy: The more the Defense litigates, the higher the Plaintiff's fees will be.

As indicated, Defense's most common talking point is that Plaintiffs' ADA attorneys work too hard and make too much money. Other say that ADA Defense attorneys view ADA litigation as Defense lawyers' health, happiness, and fortune program. Most recognize that in a thoroughly prepared lawsuit with extensive pre-filing due diligence, such as was conducted in this case, the entitlement to injunctive relief is the predictable result and litigation is futile. To encourage Defense to agree to remediation, Plaintiff serves on Defendant Initial Disclosures containing the entire due diligence file along with the Complaint. Plaintiff provides Defense counsel with photos, descriptions, locations and investigations. Nonetheless, some prefer to litigate extensively until the health, happiness and fortune program runs out of funds and then, but only then, make an Offer of Judgment.

Defense has no one but itself to blame.

### 3. Plaintiff Is Entitled to All Fees Because He Is the Prevailing Party

Defense claims that some unspecified unit of time should be deducted from the overall fee because Plaintiff did not prevail on the State Law claims.

Here, **Count One** alleges violations of 28 CFR 36.302(e) (both through third party booking agent www.expedia.com and the first party booking agent www.wyndhamhotels.com). **Count Two** alleges a related claim for negligence (breach of duty to comply with ADA), **Counts Three** and **Four** allege related claims for negligent misrepresentation and failure to disclose the requirements of 28 CFR §36.302(e)(1)(ii), and **Count Five** alleges fraud for Defendant's booking agent's affirmative misrepresentation of Defendant's ADA compliance.

Where Plaintiff makes numerous *unrelated* claims, a district court must answer two questions: "First, did the plaintiff fail to prevail on claims that were *unrelated* to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983). Regarding the first question, the Ninth Circuit has explained that

> [a] plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful . . . claim. Such unrelated claims must be treated as if they had been raised in a separate lawsuit to realize congressional intent to limit awards to prevailing parties. However, in a lawsuit where the plaintiff presents different claims for relief that involve a common core of facts or are based on related legal theories, the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis. Instead, the court must proceed to the second part of the analysis and focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*McCown v. City of Fontana,* 565 F.3d 1097, 1103 (9th Cir. 2009) (internal quotation marks and citations omitted).

4

But here, *all* Counts are *directly* related to Defendant's violations of 28 CFR §36.302(e) and the 2010 Standards. These claims were not addressed in the Offer of Judgment or the Judgment itself because of their close relationship to the ADA claims[1].

Here, the primary purpose of litigation is Defendant's compliance with 28 CFR §36.302(e) and the 2010 Standards of Accessibility Design. The Judgment, Doc 22, grants to Plaintiff precisely and fully the relief requested. This is a complete and thorough prevailing on this ADA claim.

**4. Defendant Offers no Relevant Evidence of Comparable Rates**

The rule is that Plaintiff bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984). "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiff provided this evidence, but Defendant has not provided any rebuttal evidence.

Courts also may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience. *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1277-78 (N.D. Cal. 2014) (citing *Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009)).

Here, Defendant points to Exhibit F, an Order by Judge Holland relating to fees incurred by Mr. Strojnik's son, Peter K. Strojnik. While Peter K. is undoubtedly an excellent attorney, he does not have a "comparable level of experience". *Rodriguez.*

---

[1] There is no dismissal of these related claims. They remain good and valid, albeit in an indetermined state. Plaintiff has no intention to reassert related Stat Law claims. The intent of the acceptance of the Offer of Judgment was for the case to be terminated with the question of related State Law claims to remain unadjudicated.

5

**5. Defendant's Objection to $1,362.40 in Common Pre-Filing Due Diligence is Inconsistent with his "cut-and-paste" Argument.**

Defendant provides no cogent argument for a denial of common pre-filing due diligence. Defendant admits that some items, like the Verified Complaint, have common elements, historical allegations and policy statements. These standard allegations in the Complaint were prepared during the 104.80 hours of common pre-filing due diligence. It is because of this pre-filing due diligence that Plaintiff's counsel spent only 1.35 hours drafting the Verified Complaint and 0.35 hours drafting the MIDP Disclosures. If the Verified Complaint were researched anew, and if Plaintiff's counsel did not take advantage of common due diligence pre-filing research, the drafting of the complex and thorough Verified Complaint of the type in issue here would have taken 8-10 hours of attorney time. Therefore, the common pre-filing due diligence benefits Defendant, not Plaintiff, and Defendant should not be heard to complain.

**6. The blame-the-plaintiff's-counsel-for-defendant's-discrimination has been Rejected by the 9th Circuit Court of Appeals *in toto*.**

Defense's entire disparage-the-ADA-civil-rights-lawyer narrative misses the point. Arizona's anti-civil rights frenzied stampede started by Attorney General Brnovich was stopped cold by the 9th Circuit Court of Appeals in *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) ("CREEC"). There the 9th Circuit made it clear that Plaintiff's counsel had been correct all along[2].

While one would expect Arizona's Brnovich to heed the 9th Circuit, one would be sadly incorrect. Brnovich's website proudly posts his richly deserved "Champion of Small Business" award given out by National Federation of Independent Business. Exhibit 1. Let this paper explain that the term "champion", in this context, means "a

---

[2] Brnovich is Arizona's George Wallace. He has recruited his entire taxpayer paid office to maintain segregation in our State. His fingerprints are all over the Bar's Application for Interim Suspension, Exhibit A to Defendant's Response. Exhibit 12 to this paper explains this writer's contempt for Brnovich.

militant advocate"[3]. Brnovich has successfully tapped into the same subliminal socially accepted hostility toward civil rights litigants as have many defense counsel. He understands that "a number of courts addressing Title III cases have been skeptical, and even hostile" to the civil rights of the disabled. *Gilkerson v. Chasewood Bank*, 1 F.Supp.3d 570, 596-97 (S.D. Tex., 2014) and he is using this subtle, never loudly expressed knowledge, to utterly destroy a quarter century of civil rights legislation. Brnovich is not a militant advocate *for* the disabled. He is the militant advocate *against* the disabled. Even the Arizona Republic wondered, "WHY DOES BRNOVICH HATE THE DISABLED?" Exhibit 2[4].[5]

But the 9th Circuit Court of Appeals recognized in 2011 that ADA litigation standing is conferred in one of two alternative ways: "[E]ither by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 943, 950 (9th Cir. 2011) (en banc). The "deterrence" method of establishing standing is based on the "futility" statute, 42 U.S.C. §12188(a)(1). In light of this Court's decision in *Brooke v. Joie de Vivre,* the innumerable subsequent decisions by Judge Holland in *Brooke* cases - all of which clearly establish that deterrence is established by *actual* and not *personal eyeball* knowledge of barriers - and ultimately the *CREEC* decision (which did not more than explain in simpler language that "actual knowledge" does not mean personal encounter), one could well argue that Attorney General perpetrated the scam of the century on the Superior Court.

It is undeniable that any attempt to secure civil rights for the disabled triggers Brnovich to bring the taxpayer resources to bear against such attempts. *See* Doc 22-2,

---

[3] https://www.merriam-webster.com/dictionary/champion.

[4] The Grab Line "WHY DOES BRNOVICH HATE THE DISABLED" was added by the Republic's own civil rights editor to the Undersigned's op-ed piece. It was not added by the undersigned.

[5] Obviously, as soon as this article was published, all Hades broke loose at the AG's Office and the Republic backpedaled the entire story.

7

Brnovich's Motion to Intervene in *Gastelum* cases. *See also* recently filed Motion for Order to Show Cause which seeks relief as follows:

> For the foregoing reasons, the State respectfully requests that the Court issue an order to show cause why Plaintiff AID Foundation and counsel Peter Strojnik should not be held in contempt for filing the Rule 60 Motions or, in the alternative, order them to withdraw the Rule 60 Motions and not file any further such motions.

Exhibit 3.

No matter how right one may be in pursuing ADA litigation, the threats by a rogue Attorney General with unlimited power and the use of that power to wrongfully deny disabled individuals access to the Courts[6], and to civil rights advocates to ensure adequate and competent representation, is one of the significant *risks* factors relevant to the award of fees[7].

### a. A Word about Proceedings Before Judge Wake

Defense brings up Judge Wake's Order, *see* Exhibit A to Doc 26-1[8] in which Judge Wake scorns Plaintiff's Counsel on a number of levels. Notably, Judge Wake's Order did not have the benefit of the *CREEC* decision.

Perhaps Judge Wake's Order would have been persuasive were it not under reconsideration. *See* Exhibit 5 where Plaintiff disclosed that the Court's jurisdictional

---

[6] Apparently, militant advocate Brnovich is trying to deny disabled advocates their First Amendment right to "petition the Government for a redress of grievances" — which includes the filing of lawsuits — and which is "one of `the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (quoting *United Mine Workers v. Illinois Bar Assn.,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)). Perhaps Brnovich is expecting another award.

[7] Ultimately, however, even Brnovich was able to read and understand the *CREEC* decision and stipulated to withdraw with prejudice all it its baseless and defamatory "Motion(s) for sanctions … and for an award of attorney's fees against …Strojnik for the reason that a continuing pursuit of sanctions, costs and fees against … Strojnik **would not advance the cause of justice"** (emphasis supplied). Exhibit 4. Yet, he remains undeterred in championing the small business and harassing civil rights attorneys.

[8] Appending Doc 49 *AID v. Mid First Bank* 16-cv-01969-PHX.

ruling was in error in light of the 9th Circuit Court's 2017 decision in *CREEC*. *See also* Doc 78 – Order, in which Judge Wake notes, "[w]hether this Court made any mistake of law merits briefing". Exhibit 6. One wonders why the Defense declined to mention *this* fact.

Nor does the Defense disclose that the entire "extortionist litigation practice" has been debunked by Plaintiff's Notice of Discovery, Exhibit 7, which shows, in Exhibit A thereto (Exhibit 8 to this filing) that Plaintiff's Counsel worked pro bono for longer than 1½ years and provided estimated 2000 attorney hours of free services to the disability community and donated all receipts to AID. Lastly, since the genesis of Judge Wake's Order was the litigation-privilege protected defamation by counsel for Mid First, John Doran, Plaintiff issued Rule 11 Motion for Sanctions, Exhibit 9, and *another* safe harbor notice to John Doran, *see* Exhibit10. Nor does the Defense disclose the David Dodge Report prepared in response to AG Brnovich's defamatory filings in the State Court. Exhibit 11.

**CONCLUSION AND PRAYER FOR RELIEF**

Argument by defamation has no place in a somber judicial proceeding. It must stop. Attempts at psychological prodding into a reader's possible prejudice has no place here. We are, after all, in front of a United States District Court Judge.

Defense failed to rebut the reasonableness of Plaintiff's fees, costs and expense; therefore, Plaintiff again requests that the entirety of the application be granted.

Plaintiff shall also seek leave to file a supplemental application for fees incurred after the filing of the original Application, Doc. 23.

DATED this 25th day of March 2018.

**STROJNIK, P.C.**

Peter Strojnik, 6464
Attorneys for Plaintiff